**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| **KESHA GRAY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| ) | |
| ) | |
| **v.** ) | **No. 2:20-cv-2947** |
| ) | |
| **SHELBY COUNTY, TENNESSEE, a** ) | |
| **Tennessee municipality, et** ) | |
| **al.,** ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

In March 2020, the Shelby County Sheriff's Department received a call that a woman had been domestically abused. The responding officers tackled, handcuffed, and arrested the alleged victim, Kesha Gray, who was pregnant at the time. Gray suffered a miscarriage soon after.

Now Gray brings claims under 42 U.S.C. § 1983. She sues Officers Brett Barnett, Eugenia Sumner, Brett Simonsen, Bradley Price, Brandon Foster, and Justin Lambert (collectively the "Individual Defendants") for violations of her Fourth Amendment rights. (ECF No. 72.) Gray sues Shelby County for unconstitutional practices and failure to train its employees. (Id.) Before the Court are the Individual Defendants and Shelby

County's Motions for Summary Judgment.  (ECF Nos. 86, 87, 90, 92, 94, 96, 98.)  For the following reasons, Barnett, Sumner, and Simonsen's Motions for Summary Judgment are GRANTED in part and DENIED in part.  Shelby County and Foster, Price, and Lambert's Motions for Summary Judgment are GRANTED.

## I.  Background

The following facts are undisputed.

On March 29, 2020, Shelby County Deputy Brett Barnett responded to a call about a dispute between a man and a woman. (ECF No. 110.)  The complainant, Christopher Hodges, said that he saw a black male put a black female in a chokehold and hit her in the face.  (Id.)  Hodges said that, when he tried to stop the altercation, the black male started moving towards him. Hodges pulled a gun on the black male, left the scene, and called the police.[1]  (Id.)

Barnett arrived to find Kesha Gray walking along the side of the road.  (ECF No. 72-1.)  Gray told Barnett that she and her fiancé were in a verbal argument.  She showed Barnett that she had no cuts, bruises, or other signs of physical altercation. Barnett asked for Gray's information.  Gray refused.  Barnett

---

[1] One of the undisputed material facts states that Hodges "brandished" the gun. Brandishing a gun and pulling a gun are distinct actions.  The Court assumes that Hodges pulled the gun because "pulled" is used more often in the undisputed material facts.

told Gray that she was required by law to give her information as part of an ongoing domestic violence investigation.  Gray again refused to provide any information and said she was going to walk home.

Barnett returned to his car and telephoned Officer Eugenia Sumner, who was working as the Shift Field Commander.  Barnett told Sumner what Hodges had told him, including the fact that Hodges had pulled a gun on Gray's fiancé.  (Id.)  Barnett confirmed that there were no signs of a physical altercation. Sumner told Barnett that Gray did not have to provide any information, and that he should get Hodges' information.  Sumner asked Barnett to keep an eye on Gray while Sumner called Sergeant Brett Simonsen, who worked with the General Investigation Bureau. After Sumner had explained the situation to Simonsen, Simonsen told Sumner that Gray was required to provide information as part of an ongoing investigation, and to detain Gray if necessary to get her information.  Sumner called Barnett and told him to detain Gray.

Barnett telephoned Deputy Bradley Price to ask for help detaining Gray, saying, "I'm about to talk to this lady again . . . and she's gonna have an attitude, probably going to have to fight her to get her information and Sarge says detain her and that's what I'm going to do."  (ECF No. 72-1.)  Around this time,

Officer Justin Lambert, who had received the same disturbance call as Barnett, came across Hodges and took his information.

Meanwhile, Barnett parked his car and approached Gray. He asked Gray to stop walking and Gray refused.  Barnett said, "do I need to detain you? . . . I'm going to detain you if you do not give me your ID."  (ECF No. 72-2.)  He then lunged at Gray with his handcuffs and wrapped his arms around her.  Gray began to struggle and asked Barnett why she was being arrested. Barnett told her she was being detained, not arrested, and that she should not resist unless she wanted to be tackled.

Gray broke from Barnett's hold and walked into the street. She asked onlookers to film the encounter and repeatedly told Barnett that he lacked a reason to arrest her.  A few moments later, Officers Price and Brandon Foster arrived on the scene. Barnett, Price, and Foster surrounded Gray.  Gray began to flail and accuse the three white officer of racial profiling.  The officers tackled Gray to the ground.  Gray told them she was pregnant and asked them to stop.  The officers put Gray in handcuffs and into the backseat of a police car.

The officers went over what had happened while waiting for Sumner to arrive.  Barnett said that he knew it was going to "get ugly," but that Sumner had told him that he had the right to detain Gray if she refused to provide information.  Price said, "my understanding is you have an aggravated assaulted

4

domestic.   She's refusing to give information.   Sumner said detain her, we detained her.   She didn't like it." (ECF No. 72-3.)

Sumner arrived and the officers contemplated charges. Sumner first suggested charging Gray's fiancé with aggravated assault for pulling a gun on Hodges.   Barnett corrected Sumner and said Hodges had drawn the weapon, not Gray's fiancé.   Sumner said to charge Gray's fiancé with assault against Gray, and to state in the record that Hodges was justified in drawing his weapon because he feared for his life.   Gray was charged with two counts of assault, disorderly conduct, obstructing highway or passageway, and resisting official detention.   All charges against Gray were dropped.

On December 7, 2021, Gray filed her Amended Complaint, alleging malicious prosecution and false arrest against the Individual Defendants.   (ECF No. 72.)   She also alleges excessive force against Barnett, Foster, and Price.   (Id.)   Gray alleges failure to train and unconstitutional practices against Shelby County.   (Id.)   On January 31, 2022, the Individual Defendants and Shelby County moved for summary judgment.   (ECF Nos. 86, 87, 90, 92, 94, 96, 98.)   Gray responded on March 14, 2022.   (ECF No. 109).

## II.  Standard of Review

Under Federal Rule of Civil Procedure 56, a court shall grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by showing the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case. See Fed. R. Civ. P. 56(c)(1); Viet v. Le, 951 F.3d 818, 823 (6th Cir. 2020) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

When confronted with a properly-supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). "A 'genuine' dispute exists when the plaintiff presents 'significant probative evidence' 'on which a reasonable jury could return a verdict for her.'" EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (quoting Chappell v. City of Cleveland, 585 F.3d 901, 915 (6th Cir. 2009)). The nonmoving party "must show that there is more than 'some metaphysical doubt as to the material facts.'" Goodman v. J.P. Morgan Inv. Mgmt., Inc., 954 F.3d 852, 859 (6th Cir. 2020) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

A party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings.  <u>Celotex Corp.</u>, 477 U.S. at 324.  Instead, the nonmoving party must adduce concrete evidence on which a reasonable juror could return a verdict in her favor.  <u>See</u> Fed. R. Civ. P. 56(c)(1).  The Court does not have the duty to search the record for such evidence.  <u>See</u> Fed. R. Civ. P. 56(c)(3);  <u>InterRoyal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." <u>FDIC v. Jeff Miller Stables</u>, 573 F.3d 289, 294 (6th Cir. 2009) (quotation marks and citations omitted).

## III. Analysis

### A.    The Individual Defendants' Motions

The Individual Defendants argue that they did not violate Gray's constitutional rights, and if they did, they are protected by qualified immunity.

Qualified immunity shields government actors from civil liability under 42 U.S.C. 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  In deciding whether qualified immunity

is appropriate, a court must determine (1) whether the actor's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident. Pearson v. Callahan, 555 U.S. 223, 232 (2009). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 577 U.S. 7, 11-12 (2015). A clearly established right can be established by existing precedent, although a case directly on point is not required. Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). Ultimately, the "sine qua non of the 'clearly established' inquiry is 'fair warning.'" Baynes v. Cleland, 799 F.3d, 612-13 (6th Cir. 2015) (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)).

Although "the defendant bears the burden of pleading a qualified immunity defense, the ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." Palma v. Johns, 27 F.4th 419, 427 (6th Cir. 2022) (internal citations and quotations omitted). "When more than one officer is involved, the court must consider each officer's entitlement to qualified immunity separately." Smith v. City of Troy, 874 F.3d 938, 944 (6th Cir. 2017).

### 1.    Unreasonable Seizure/ False Arrest[2]

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."    U.S. Const. amend. IV.    "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'"   Heien v. North Carolina, 574 U.S. 54, 60 (2014) (quoting Riley v. California, 573 U.S. 373, 381 (2014)).

"There are three kinds of permissible encounters between the police and citizens: '(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause.'"   United States v. Beauchamp, 659 F.3d 560, 566 (6th Cir. 2011) (quoting United States v. Smith, 594, F.3d 530, 535 (6th Cir. 2010)).

An encounter is consensual where a reasonable person would feel free to disregard the police and go about her business. California v. Hodari D., 499 U.S. 621, 628 (1991).   Purely consensual stops are not subject to the Fourth Amendment, but once an encounter loses its consensual nature, it triggers Fourth

---

[2] Gray alleges that Barnett lacked any reasonable, articulable suspicion to stop her.  Gray's false arrest claim is included within a broader, unreasonable seizure claim.

Amendment scrutiny.  Beauchamp, 659 F.3d at 566 (citing Florida v. Bostick, 501 U.S. 429, 434 (1991)).

### a.   Barnett

The first question is when the encounter between Barnett and Gray lost its consensual nature.  "An individual is seized when an officer 'by means of physical force or show of authority, has in some way restrained [her] liberty.'" Beauchamp, 659 F.3d at 566 (quoting Terry v. Ohio, 392 U.S. 1, 19 n. 16) (1968)) (alteration added).  "Whenever an officer restrains the freedom of a person to walk away, he has seized that person." Tennessee v. Garner, 471 U.S. 1, 7 (1985).  "If the officer acts by a show of authority . . . the individual must actually submit to that authority." Beauchamp, 659 F.3d at 566 (citing Brendlin v. California, 551 U.S. 249, 254 (2007)).

When Barnett first encountered Gray, he told her that she was required to answer questions as part of an ongoing investigation.  He did not restrain Gray's freedom.  Gray refused to answer any questions and kept walking.  Barnett returned to his car.  Gray did not submit to Barnett's authority.  Barnett did not seize Gray during their first encounter.

After speaking with Sumner, Barnett again approached Gray.  This time, Barnett lunged at Gray with his handcuffs and wrapped his arms around her.  Barnett told Gray that she was being detained.  Barnett's actions constituted a seizure.

The next question is whether Barnett's actions constituted an arrest or an investigative detention.  When police actions go "beyond checking out the suspicious circumstances that led to the original stop, the detention becomes an arrest."  United States v. Obasa, 15 F. 3d 60, 607 (6th Cir. 1994).  To determine whether a detention has become an arrest, courts consider the manner in which an investigatory stop is conducted and the degree of force used.  Smoak v. Hall, 460 F.3d 768, 781 (6th Cir. 2006).  An officer may draw his handcuffs during an investigative stop only if warranted by the circumstances.  Dorsey v. Barber, 517 F.3d 389, 399 (6th Cir. 2008).

Barnett did not believe that Gray had committed or was involved in a crime, but that Gray was the victim of domestic abuse.  Knowing that, Barnett lunged at Gray with handcuffs and wrapped his arms around her.  A reasonable jury could conclude Barnett's use of force and handcuffs constituted an arrest.  See Smoak 460 F.3d at 781 (if handcuffs and use of force are not justified by circumstances, investigative stop transforms into arrest).

Barnett must have had probable cause to arrest Gray.  "For probable cause to exist for an arrest, the 'facts and circumstances within the officer's knowledge [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the

11

suspect has committed, is committing or is about to commit an offense.'" Weser v. Goodson, 965 F.3d 507, 513-14 (6th Cir. 2020) (quoting Thacker v. City of Columbus, 328 F.3d 244, 255 (6th Cir. 2003)) (alteration in original). A probable cause determination is made "at the moment of the arrest." Sykes v. Anderson, 6225 F.3d 294, 306 (6th Cir. 2010). A showing of probable cause is a complete defense to a claim of false arrest. Tlapanco v. Elges, 969 F.3d 638, 651 (6th Cir. 2020) (citing Halasah v. City of Kirtland, 574 F. App'x 624, 629 (6th Cir. 2014)).

Barnett says that he had probable cause to arrest Gray based on Hodges' complaint. According to Hodges' complaint, Gray was the victim of domestic abuse. Hodges never suggested that Gray had committed or was committing an offense. Hodges' complaint did not give Barnett probable cause to arrest Gray.

Barnett argues that two Tennessee laws required Gray to participate in the investigation and that, because she refused, Barnett had the authority to arrest her. Barnett says that T.C.A. § 36-3-619(e) mandated his actions. A plain reading of the text suggests otherwise. The statute reads, "[w]hen a law enforcement officer investigates an allegation that domestic violence occurred, the officer shall make a complete report and file the report with the officer's supervisor." Id. Nothing in the text requires the alleged domestic violence victim to provide

information to an officer or authorizes an officer to arrest the alleged victim.  Barnett cites no case law or legislative history to support his interpretation.   T.C.A. § 36-3-619(e) did not authorize Gray's arrest.

Barnett claims that he could detain Gray because she was a material witness under T.C.A. § 40-11-110.[3]  Under § 40-11-110, a court can require a witness with material testimony who has refused to respond to a criminal proceeding to give bail.  <u>Id.</u> An affidavit must identify the materiality of the testimony.  <u>Id.</u> If the witness fails to give bail, the court may commit the person to custody.  <u>Id.</u>  Gray was not a material witness to any criminal proceeding.  A court did not require Gray to give bail. Section 40-11-110 is inapplicable here.

Barnett claims that Gray, by resisting his attempts to detain her, violated Tennessee law, which gave Barnett probable cause to arrest her.  That reasoning "puts the cart before the horse."  <u>Wright v. City of Euclid</u>, 962 F.3d 852, 874 (6th Cir. 2020).  Probable cause must have existed "at the moment of the arrest."  <u>Sykes</u>, 625 F.3d at 306.  The arrest began when Barnett lunged at Gray with Barnett's handcuffs.  Barnett has not identified any probable cause at the moment of arrest.  Because

---

[3] In his Motion for Summary Judgment, Barnett cites T.C.A. § 4-11-110, not § 40-11-110.  Section 4-11-110 addresses appropriations. <u>Id.</u>  The Court assumes that Barnett means to refer to § 40-11-110.

Barnett lacked probable cause, he falsely arrested Gray in violation of her Fourth Amendment rights.

Even if Barnett's actions were an investigative stop, Gray was subject to an unreasonable seizure. The constitutionality of an investigative stop depends on a two-part analysis. Beauchamp, 659 F.3d at 569. The stop must have a proper basis, "which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to a reasonable suspicion" of criminal activity. United States v. Garza, 10 F.3d 1241, 1245 (6th Cir. 1993). If the stop was proper, a court considers the degree of intrusion, judged on the reasonableness of the officials' conduct given the circumstances. Beauchamp, 659 F.3d at 569 (internal citations and quotations omitted).

Barnett's stop was without proper basis. He lacked a reasonable, articulable suspicion that Gray had been, was, or was about to be engaged in criminal activity. See United States v. Place, 462 U.S. 696, 702 (1983). Even treated as an investigative stop, Barnett's seizure was unlawful.

Barnett is still entitled to qualified immunity unless his actions violated a constitutional right clearly established at the time of the incident. Pearson, 555 U.S. at 232. Whether construed as a false arrest or an unreasonable seizure, Barnett's conduct violated clearly established law. An arrest without

14

probable cause is a violation of a clearly established right. See Tlapanco, 969 F.3d at 654. The standard for investigative detentions has been clearly established since 1968. Feathers v Aey, 319 F.3d 843, 850-51 (6th Cir. 2003). Barnett's actions violated each of these clearly established constitutional standards. Barnett is not entitled to qualified immunity on the false arrest claim or the unreasonable seizure claim. His Motion for Summary Judgment on the false arrest and unreasonable seizure claims is DENIED.

### b.  Sumner and Simonsen

After Barnett's initial conversation with Gray, he returned to his car and telephoned Sumner. Barnett explained the situation to Sumner: Hodges observed a domestic violence incident, Hodges pulled a gun on Gray's fiancé, Gray had no visible physical signs of injury and claimed she was in a verbal argument with her fiancé, and Gray did not want to provide any information or make a report. Sumner told Barnett that Gray did not have to provide any information, and that she would call him back. After speaking with Simonsen, Sumner told Barnett to detain Gray and get her information.

Sumner argues that she misunderstood Barnett to say that Gray's fiancé pulled the gun on Hodges, not the other way around, and that she relayed this incorrect information to Simonsen. Simonsen told Sumner to get Gray's information and detain her,

if necessary.  Gray argues that Sumner did know Hodges had pulled the weapon, not Gray's fiancé, and that Sumner told Simonsen that.

Under either scenario, Sumner and Simonsen understood that Gray was the alleged victim of domestic abuse.  They lacked a reasonable, articulable suspicion that Gray had been, was, or was about to be engaged in criminal activity.  By ordering Barnett to detain Gray, Sumner and Simonsen violated Gray's constitutional right to be free from unreasonable search and seizure.  See id.

Both Sumner and Simonsen assert qualified immunity as an affirmative defense.  The standard for investigative detentions has been clearly established since 1968.  Feathers, 319 F.3d at 850-51.  Sumner and Simonsen violated clearly established law by ordering Barnett to detain Gray, and they are not shielded by qualified immunity.  Their Motions for Summary Judgment on the unreasonable seizure and false arrest claims are DENIED.

### c.   Price, Foster, and Lambert

Price and Foster arrived to see Barnett attempting to arrest Gray, who was in the middle of the street and resisting.  Price and Foster did not know that Gray was an alleged victim of domestic violence.  Gray flailed at Price and Foster as they drew near.  The facts and circumstances available to Price and Foster were sufficient to warrant a reasonable officer to believe

that Gray had committed, or was about to commit, an offense. Price and Foster had probable cause to arrest Gray.  Their Motions for Summary Judgment on the unreasonable seizure and false arrest claims are GRANTED.

While Price, Foster, and Barnett arrested Gray, Lambert took a statement from Hodges.  By the time Lambert arrived on the scene, Gray had been handcuffed.  Lambert helped the officers put Gray in the back of his vehicle.  Gray had already been seized and arrested by the time Lambert arrived.  Lambert's Motion for Summary Judgment on the unreasonable seizure and false arrest claims is GRANTED.

### 2.  Malicious Prosecution

Gray claims malicious prosecution against the Individual Defendants.  To succeed on a malicious prosecution claim under § 1983, a plaintiff must prove that: (1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the criminal prosecution;  (3) because of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor.  Webb v. United States, 789 F.3d 647, 659 (6th Cir. 2015) (citing Sykes, 625 F.3d at 308).  There is no dispute that Gray suffered a deprivation of liberty apart from the initial arrest and that the criminal proceeding was resolved in her favor.

The probable cause analysis for a malicious prosecution claim is distinct from the analysis of a false arrest or unreasonable seizure claim.  The question is whether there was probable cause to initiate the criminal proceeding against Gray, not to arrest her.  Sykes, 625 F.3d at 310-11.  Gray was charged with two counts of assault, in violation of T.C.A. § 39-13-101, disorderly conduct, in violation of T.C.A. § 39-17-305, obstructing a highway or passageway, in violation of T.C.A. § 39-17-307, and resisting official detention, in violation of T.C.A. §39-16-602.

Once Barnett had attempted to handcuff Gray, she began to struggle and walked into the middle of the street. Price and Foster arrived on the scene soon after.  Gray began flailing at the officers as they tried once more to handcuff her.  These facts are sufficient to "lead an ordinary person to believe [Gray] was guilty of the crime charged." Webb, 789 F.3d at 660 (internal citation omitted)(alteration added).  That does not contradict the fact that there was no probable cause at the time of the arrest.  For a false arrest claim, probable cause is determined at the time of arrest.  Barnett's initial arrest was unlawful because there was no probable cause.  Gray's subsequent

acts gave the officers probable cause to initiate a criminal proceeding against her.[4]

Probable cause defeats a malicious prosecution claim. <u>See Marcilis v. Township of Redford</u>, 693 F.3d 589, 604 (6th Cir. 2012). The Individual Defendants' Motions for Summary Judgment on the malicious prosecution claim are GRANTED.

### 3. **Excessive Force**

"The Fourth Amendment's prohibition against unreasonable seizures protects citizens from excessive use of force by law enforcement officers." <u>Godawa v. Byrd</u>, 798 F.3d 457, 463 (6th Cir. 2015). To determine whether an officer used excessive force, a court asks whether the officer's actions were "objectively reasonable" in light of the facts and circumstances confronting him. <u>Palma</u>, 27 F.4th at 428 (citing <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989)). Courts look at the totality of the circumstances surrounding the officer's use of force, and only to the facts knowable to the officer. <u>Id.</u> (internal citations omitted). The use of force should not be viewed with the 20/20 vision of hindsight, as police officers are "often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force

---

[4] This interpretation is reinforced by Tennessee law. Under T.C.A. § 39-16-602(b), that an arrest or search was unlawful does not generally provide a defense to a charge of obstruction of law enforcement.

that is necessary in a particular situation." <u>Graham</u>, 490 U.S.
at 396-97.

Courts begin with three non-exhaustive factors when
considering the totality of the circumstances: (1) the severity
of the crime;  (2) whether the suspect posed an immediate threat
to the safety of the officers or others;  and (3) whether the
suspect was actively resisting arrest.  <u>Palma</u>, 27 F.4th at 428-
29 (internal citations and quotations omitted).  A court must
segment the incident into its constituent parts and consider the
officers' entitlement to qualified immunity at each step.  <u>Smith</u>,
874 F.3d at 944.

There are two separate incidents:  when Barnett tried to
subdue Gray by himself, and when Barnett, Price, and Foster
subdued Gray together.

### a.    The First Incident

Barnett lunged at Gray with handcuffs and wrapped his arms
around her.  At this point, Barnett believed Gray was the victim
of a violent crime, not a suspect.  Gray posed no threat to
Barnett's safety or the safety of others;  she was walking home
along a sidewalk.  These facts suggest that Barnett's use of
force was excessive and violated clearly established
constitutional principles.  <u>See</u> <u>Smith</u>, 874 F.3d at 945 (forceable
handcuffing of plaintiff who committed no crime and posed no

threat is excessive and violates clearly established law). Barnett is not entitled to qualified immunity.

### b.    The Second Incident

Gray broke away from Barnett's hold and walked into the street.  She asked onlookers in their cars to film the incident. Price and Foster arrived thereafter.   The three officers encircled Gray, and she flailed her arms as they came closer. The officers tackled Gray in the street and put her in handcuffs. Gray told the officers she was pregnant.  The officers put Gray in the backseat of a police car.

In the second incident, Gray was actively resisting arrest. She posed a safety risk to those around her by walking into the street and flailing at the officers.  The officers did not use excessive force in violation of clearly established constitutional principles.   They are entitled to qualified immunity.

Barnett's Motion for Summary Judgment on the excessive force claim is GRANTED in part and DENIED in part.  He is entitled to qualified immunity on the second incident, but not the first. Price and Foster's Motions for Summary Judgment on the excessive force claim are GRANTED.

### B.    Shelby County's Motion for Summary Judgment

Shelby County seeks summary judgment on Gray's <u>Monell</u> claims and her claim for punitive damages.

1. **_Monell_ Liability**

Section 1983 allows plaintiffs to bring claims against municipalities and other local governments.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  A municipality may not be held liable under § 1983 on a respondeat superior theory. D'Ambrosio v. Marino, 747 F.3d 378, 388-89 (6th Cir. 2014).  The plaintiff must show the municipality was the "moving force" behind the alleged injury.  Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997).  A plaintiff can do this by showing the municipality had a policy or custom that caused the violation of her rights.  Jackson v. City of Cleveland, 925 F.3d 793, 828 (6th Cir. 2019) (citing Monell, 436 U.S. at 694).

To show that a municipality had such a policy or custom, a plaintiff may prove "(1) the existence of an illegal official policy or legislative enactment;  (2) that an official with final decision making authority ratified illegal actions;  (3) the existence of a policy of inadequate training or supervision;  or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."  Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013)(internal citation omitted).  Gray argues that Shelby County had a policy of inadequate training and supervising, and a custom of tolerance of federal rights violations.  Shelby County seeks summary judgment on both claims.

### a.   Failure to Train or Supervise[5]

For Shelby County to be liable for its failure to train its employees, Gray must establish that: (1) Shelby County's training program was inadequate for the tasks that its officers perform; (2) the inadequacy was the result of Shelby County's deliberate indifference;  and (3) the inadequacy was closely related to or actually caused the injury.  Ciminillo v. Streicher, 434 F.3d 461, 469 (6th Cir. 2006)(citing Russo v. City of Cincinnati, 953 F.2d 1036, 1046 (6th Cir. 1992)).

All Individual Defendants have been certified by the Tennessee Peace Officers Standards and Training ("POST") Commission, and each has received hundreds of hours of formal training, including training about Fourth Amendment law.  Gray has not explained why the training was inadequate and offers no alternative course of training.  Although Barnett, Sumner, and Simonsen's statements show a misunderstanding of the Fourth Amendment and Tennessee law, Shelby County is not liable for the occasional mistakes of its officers.  See Graham v. Cnty. of Washtenaw, 358 F.3d 377, 385 (6th Cir. 2004).

---

[5] The "'failure to supervise' theory of municipal liability is a rare one. Most agree that it exists and some allege they have seen it, but few actual specimens have been proved. It appears to relate to two more common theories of municipal liability:  an inadequate-training theory . . . or an 'acquiesce[nce]' theory[.]" Mize v. Tedford, 375 F. App'x 497, 500 (6th Cir. 2010).  Gray's argument for failure-to-supervise liability is essentially the same as her argument for failure-to-train liability.  The Court evaluates the failure-to-supervise claim as part of the failure-to-train claim.

Even if Gray could prove inadequate training, she would also have to show deliberate indifference.  To establish deliberate indifference, "the risk of a constitutional violation arising as a result of the inadequacies in the municipal policy must be 'plainly obvious.'"  Gregory v. City of Louisville, 444 F.3d 725, 752 (6th Cir. 2006) (quoting Brown, 520 U.S. at 412). A plaintiff can show deliberate indifference through (1) "prior instances of unconstitutional conduct demonstrating that the [County] had notice that the training was deficient and likely to cause injury but ignored it" or  (2) "evidence of a single violation of federal rights, accompanied by a showing that the [County] had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." Campbell v. City of Springboro, 700 F.3d 779, 794 (6th Cir. 2012) (citing Plinton v. Cnty. of Summit, 540 F.3d 459, 464 (6th Cir. 2008))(alteration added).

Gray has not shown prior instances of unconstitutional conduct.  She has provided no evidence of any additional training that would be necessary.  See Griffith v. Franklin Cnty., 975 F.3d 554, 584 (6th Cir. 2020) (no deliberate indifference for single incident because plaintiff did not show that additional training would be necessary).  She has not shown that the training was so deficient and so likely to cause injury that the failure to train presented an obvious potential for violations.

See Bonner-Turner v. City of Ecorse, 627 F. App'x 400, 414 (6th Cir. 2015).  Gray has not shown deliberate indifference or that the officers' training was inadequate.  Shelby County's Motion for Summary Judgment on the failure-to-train claim is GRANTED.

### b.    Custom or Policy

In her Amended Complaint, Gray claims that Shelby County had unconstitutional policies and practices.  Shelby County seeks summary judgment on Gray's claim.  Gray does not address the unconstitutional policies and practices claim in her response to Shelby County's Motion for Summary Judgment.  Summary judgment is appropriate when a "motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case."  Wimbush v. Wyeth, 619 F.3d 632, 636 (6th Cir. 2010). Shelby County's Motion for Summary Judgment on the unconstitutional policies and practices claim is GRANTED.

### 2.    Damages

Shelby County seeks dismissal of Gray's claim for punitive damages.  A plaintiff cannot recover punitive damages from municipalities under § 1983.  Newport v. Fact Concerts, Inc., 453 U.S. 247, 260 (1981).  Shelby County's Motion for Summary Judgment on punitive damages is GRANTED.

**IV.  Conclusion**

For the foregoing reasons, Barnett, Sumner, and Simonsen's Motions for Summary Judgment are GRANTED in part and DENIED in part. Shelby County and Foster, Price, and Lambert's Motions for Summary Judgment are GRANTED.

SO ORDERED this 31st day of May, 2022.


*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

26